# Baer v. The State Life Insurance Company, Appellant.

*Insurance—Life insurance—Medical questions—Answers—Representations—Warranties.*

1. Where in an action on a life insurance policy, it appeared that it was agreed that the statements in response to the medical questions were part of the consideration for which the policy was issued, and that the policy should not take effect unless the insured was in good health when the first premium was paid, that in answering the medical questions, the insured said he was in good health as far as he knew or believed, but where it appeared that plaintiff could not have been in perfect health when he applied for the policy, the case was for the jury, where there was no evidence that plaintiff knew or had reason to believe that he was then diseased.

2. Where in such case it appeared that in response to a question whether the insured had "consulted a physician within the past year for anything trivial or otherwise, not mentioned above" and the insured replied "no," but where there was evidence that he had consulted a physician, with reference to headaches and indigestion, the case was for the jury, where the dates of those consultations were not fixed and especially where a further question as to when the insured last consulted a physician was not answered; in any event, the credibility of the witness was for the jury.

3. Where in such case it was not clear as to whether the questions as to the names of physicians last consulted by the applicant referred to an attending physician or a consulting physician, and the applicant gave the name of a consulting physician it was proper to permit the jury to determine whether the applicant might not have understood the questions in the sense in which they were answered, and it was not material whether or not the answer was strictly accurate where the applicant gave the names of both physicians who attended him, as in such case the company could have inquired of such physicians as to the health of the applicant.

4. The report of a medical examiner is to be construed most strongly against the party by whom it is prepared, and by whose medical officer the answers to the questions are taken and written into the blanks left for that purpose.

5. Where in such case the policy provided that the statements of the insured in the absence of fraud were to be deemed representations and not warranties, the trial judge properly decided that the incorrectness of the answers to the questions did not necessarily preclude the plaintiff from recovery.

6. In such case it was not error to admit evidence of a witness who saw plaintiff about the time when the policy was issued that, to ordinary observation and outward appearances, he was in good health.

Argued Oct. 12, 1916. Appeal, No. 96, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., April T., 1915, No. 1410, on verdict for plaintiff, in case of Emma Baer v. The State Life Insurance Company. Before Brown, C. J., Mestrezat, Potter, Stewart and Frazer, JJ. Affirmed.

Assumpsit on a life insurance policy. Before Carpenter, J.

From the record it appeared that this action of assumpsit was brought to recover $5,000, being the amount of a policy issued by defendant on the life of plaintiff's husband, John Moses Baer. The policy was issued July 28, 1913, and the first year's premium was paid by the insured July 31, 1913. The insured died May 4, 1914. Defendant refused to pay the loss on the ground that the insured had made false representations in his application as to his state of health and his last consultation of a physician.

It was not claimed that there were misrepresentations in the application proper, but the answers alleged to be untrue were contained in the medical examiner's report, which was filled out by the examiner and signed by the applicant. The questions and answers were as follows:

5. Are you in perfect health so far as you know or believe?—Yes.

22. Have you now, or have you ever had, any of the following: Headache—severe, protracted or frequent?—No.

24. Have you consulted a physician within the past two years for anything, trivial or otherwise, not mentioned above? How often, and for what?—No.

24a. When did you last consult a physician?

24b. For what?—Appendicitis.

24c. Names and addresses of consulting physicians?— Dr. Swope.

In his answer to question 23 the applicant said that his attending physician was Dr. A. R. Suster (Schuster), Finleyville, Pa.

The application contained the following stipulation:

"It is hereby agreed that all the foregoing statements and also those I make to the Company's Medical Examiner, which are hereby made a part of this application, are offered to the Company as a consideration for the policy applied for." Also a stipulation that the policy should not take effect unless the applicant was in good health when the first premium should be paid.

Condition 8 of the policy was as follows:

"Entire Contract. This Policy, together with the application therefor, shall constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in the application therefor."

Upon the trial, Dr. A. R. Schuster testified that he lived next door to John Moses Baer, the insured, and had been his family physician for twelve years prior to and up to the time of his death. In the first part of the year 1913 Baer was frequently at witness's office and consulted him mostly in regard to stomach disorders and complained some of headache. He was an unusually large meat eater and was indiscreet in his eating. He complained of headaches and distress in the stomach.

He was in and out almost daily, but witness could not say he was in daily for consultation. Frequently witness gave him some treatment and cautioned him in regard to his habits of eating. Witness could not say how often Baer would develop headache and stomach trouble or when he first started to treat him for them. He might have complained a year before his death, which would be four or five months before Labor Day. On the day before Labor Day, 1913, Baer suffered so that his condition was alarming, and witness advised him to consult a specialist. He consulted Dr. Cameron and reported to witness that Dr. Cameron told him that he was suffering from hardening of the arteries, or arterial sclerosis. Witness had been, up to that time, treating Baer merely for indiscretion in eating, and did not think there was anything more than that the matter with him.

Baer first consulted Dr. F. C. Stahlman, an eye specialist, whom he visited Sept. 5, 1913, and who found indications of Bright's disease or diabetes. On Sept. 8th, he was examined by Dr. M. C. Cameron, who testified that he was suffering from chronic Bright's disease in an advanced stage. His condition could not have developed since July 18, 1913, but chronic Bright's disease comes on very insidiously and a man may not know he has it until it is well established, or until some doctor tells him about it. Baer said he had been suffering from headaches, which is one of the common symptoms of the disease. Witness told Baer he had hardening of the arteries. The fact that a man suffers from headaches does not necessarily mean that he has Bright's disease. He may have headaches from glasses that are not properly fitted, from overeating or overdrinking or from other causes.

Baer died eight months afterwards from hardening of the arteries and Bright's disease.

When plaintiff was on the stand the trial judge permitted her to testify, subject to exception, that when the proofs of loss were presented to her for signature by her

physician, she was suffering from a nervous breakdown and signed them without examining them. The trial judge also admitted, subject to exception, the testimony of a number of witnesses who were acquainted with Baer that he was apparently in good health prior to September, 1913.

Verdict for plaintiff for $5,505.62 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*Ralph H. Frank,* with him *Alvin A. Morris, Albert J. Walker* and *Harold Allen,* of *Morris, Walker & Allen,* for appellant.

*Charles H. Sachs,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 8, 1917:

In this action of assumpsit the plaintiff sought to recover the amount of a policy of insurance upon the life of her husband. Payment was refused on the ground that the insured had made false representations in his application, as to his state of health, and as to the time when he had last consulted a physician. The answers alleged to be untrue are contained in the medical examiner's report, which was filled out by the examiner and signed by the applicant. It was stipulated that these statements were part of the consideration for which the policy was issued, and it was also agreed that the policy should not take effect unless the insured was in good health when the first premium was paid. At the trial, a request by defendant for binding instructions was refused, and the case was submitted to the jury, who found a verdict for plaintiff for the full amount of the policy, with interest. From the judgment thereon entered, defendant has appealed, and its counsel now con-

tend that the case should not have been submitted to the jury, but that, under the evidence, the court should have disposed of it as matter of law. It appears from the record, that, in answering a question put to him when he made his application, the insured said he was then in perfect health, so far as he knew or believed. Medical opinion evidence was offered at the trial, which tended to show that he could hardly have been in perfect health when he applied for the policy on July 18, 1913, but, if that was the case, there was no evidence that he knew it, or had reason to believe that he was then diseased. His attending physician, who was also his next-door neighbor and saw him almost daily, testified that he did not suspect anything serious in his condition until the day before Labor Day, 1913. Defendant's medical examiner, who examined him and tested his urine on the same day on which the answer was made, reported confidentially to the company that he found the applicant in the best of health. He also certified that he considered the applicant a first-class risk, and recommended that the policy be issued. The wife of the insured and seven of his neighbors and acquaintances testified that he appeared to be in good health during the spring and summer of 1913, and was able to attend to his business and did not lose a day from his store on account of sickness. Under this testimony, it was for the jury to say whether, when the insured made his application and paid his premium, he either knew or had reason to believe that he was not in good health. The representation was not absolute, but was made only in so far as the insured knew or believed. Whether or not he was in good health when the first premium was paid and accepted, as required by the stipulation, was also, under the evidence, clearly a question for the jury. "The term 'good health' does not mean absolute perfection, but is comparative. The insured need not be entirely free from infirmity or from all the ills to which flesh is heir.......Slight troubles, temporary and light illness, infrequent and light attacks of

sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. In other words, the term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system": Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618. In the case at bar a physician testified that the condition of insured, which he found existing on September 8th, indicated an advanced stage of Bright's disease, which, in his opinion, could not have developed and progressed that far within the period since the date of the application. But this testimony was oral and its effect and weight as contrasted with the statements of the applicant were for the jury, as was the truthfulness of the insured's statement that he had never had "severe, protracted or frequent headaches." We do not understand that appellant presses the point of misrepresentation as to the answer to question 24 in the medical examiner's report. That query was, "Have you consulted a physician within the past two years for anything, trivial or otherwise, not mentioned above?" Insured answered, "No." The evidence showed that he had consulted Dr. Schuster, who was his family physician and next-door neighbor, a number of times preceding Labor Day, 1913, with reference to headaches and indigestion. But the dates of these consultations were not fixed. The complaint of appellant is chiefly with respect to questions 24a, 24b and 24c. Of these, 24a, "When did you last consult a physician?" was not answered. This was probably the fault of the medical examiner, who wrote down the answers and filled the blank. At any rate, simple failure to answer the question was not misrepresentation. Question 24b "For what?" was answered "Appendicitis." Counsel for appellant argue that this answer is untrue, because the testimony of Dr. Schuster shows that since he had ap-

pendicitis, the insured had consulted him for headaches and indigestion. But Dr. Schuster's testimony was not clear as to just when those consultations occurred, and it, therefore, became a question for the jury to determine whether they were before the date of the application; in any event, the credibility of the witness was for the jury.

The trial judge held there was an ambiguity in questions 24, 24a, b and c, in that it was not clear whether they referred to an attending physician or a consulting physician, and he left it to the jury to say whether the applicant might not have understood them in the latter sense. If so, his answers to both 24b and 24c, "Names and addresses of consulting physicians?" were not untrue. In his attack of appendicitis, Dr. Swope was the consulting physician, or perhaps more correctly the surgeon. Question 24c refers in terms to a "consulting" physician, that is, one called by the attending physician in consultation, not to one whom the patient had consulted. As the applicant had already answered that his attending physician was Dr. Schuster, he may have taken the subsequent inquiry to refer, not to the same person, but to a consulting physician in the ordinary use of the term. Reference to the facsimile of a portion of the report inserted at the end of the appellant's paper book shows that the medical examiner had first written the name of Dr. Swope as the attending physician of the applicant, had then erased it and written over the erasure "Dr. A. R. Suster" (meaning Schuster), and had then put down Dr. Swope's name as applicant's consulting physician. This change indicates that both the applicant and the medical examiner interpreted the questions in the manner the jury has found they might reasonably have done. The distinction does not seem to be of any great practical importance, for the applicant gave the names of both physicians, and the defendant company could have made inquiry of each of them for particulars, had it seen fit to do so. The evidence does not show that the insured had consulted any physician other than the two named,

within the period covered by the scope of the inquiry. Such a paper is, of course, to be construed most strongly against the party by whom it is prepared, and by whose medical officer the answers to the questions are taken and written into the blanks left for that purpose. The policy provides that the statements of the assured, in the absence of fraud, are to be deemed representations and not warranties. In the late case of Suravitz v. Prudential Ins. Co., 244 Pa. 582, the subject of representations in policies of life insurance was fully considered. It was there said (p. 587) : "The cases are not in entire harmony, but a fair reading of them will show a tendency to broaden the scope of inquiry into questions relating to the materiality, correctness and truthfulness of answers, and the good faith of the applicant in making them, when suit is brought upon a policy containing a covenant that the statements of the insured shall be deemed representations and not warranties." That decision was expressly followed in Oplinger v. New York Life Ins. Co., 253 Pa. 328. We are clear that the trial judge could not properly have taken this case from the jury, and the assignments in which it is alleged that he erred in refusing to do so, must be dismissed.

Complaint is made in the seventh assignment of the affirmance of plaintiff's fifth point, in which the jury were instructed that, if made in good faith, a misrepresentation by the insured, as to consultations with Dr. Schuster at times other than those mentioned in the application, would not avoid the policy, unless the misrepresentation was a material one. The point was obscure and difficult to understand, and counsel should have been required to restate and simplify the request. It is dangerous to affirm a point which is not clear to the court, for to the jury it would present even more difficulty. We do not, however, feel that the submission of the point as presented amounted to reversible error. The instruction requested was intended to aid the jury in determining the materiality of the representation, if they

found it to have been made in good faith. Under the doctrine of Suravitz v. Ins. Co., supra, the question was properly for the consideration of the jury.

In a number of other assignments error is alleged in the admission of evidence of acquaintances that the insured was apparently in good health, and was able to attend to his business during the spring and summer of 1913. As one of the questions to be determined by the jury was whether the insured was in good health, so far as he knew or believed, when he made his application, it was competent, as having some bearing upon his own good faith and credibility, to show by witnesses, who saw him about that time, that, to ordinary observation, and to all outward appearance, he was in good health.

There is no merit in the fifteenth assignment, which alleges error in admitting, against objection, plaintiff's testimony that at the time she signed the proofs of death, she had a nervous breakdown, and did not examine the papers for the purpose of correcting errors therein. Whether she did so or not, is immaterial, as there is no controversy as to the statements contained in the proofs of death.

The assignments of error are all overruled, and the judgment is affirmed.