## Crimlisk *v.* Philco Corporation, Appellant.

Argued October 7, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Louis Wagner*, with him *Richard A. Smith*, for appellant.

*Frank R. Ambler*, for appellee.

OPINION BY HIRT, J., January 8, 1948:

Claimant, admittedly, was totally disabled from an accident on August 17, 1943. The open compensation agreement which his employer then entered into with him recites that "going into washroom he slipped and fell—striking back and head—resulting in contusion and abrasion of back—mild cerebral concussion". Compensation was paid on the agreement for total disability until April 24, 1944, when claimant signed a final receipt at the request of a representative of the insurance carrier. But when he demonstrated that he was unfit to work, compensation payments under the prior agreement were voluntarily resumed. Later, other work was provided for claimant, which, it was believed, he could do. And on November 26, 1944, he signed a second final receipt in the belief that compensation payments would

again be resumed if he found that he was unable to perform the work assigned to him. After one week it clearly appeared that he was wholly incapable of doing any work, and on December 5, 1944, claimant petitioned to have the final receipt set aside. The referee found that the receipt had been signed upon mistake of fact and in setting it aside ordered a resumption of compensation payments for total disability.

Claimant's right to have the receipt set aside—the sole question raised in this appeal—and to further compensation must rest upon medical testimony. The board on the first appeal to it did not consider the testimony of claimant's neurologist sufficient proof of disability from accident because of his lack of knowledge of claimant's prior medical history. Accordingly, an impartial medical expert was appointed and the case was referred back to the referee. Dr. Samuel T. Gordy, a well-qualified neurologist, was the expert appointed by the board. From his findings and the history of claimant's prior physical condition, as disclosed by hospital records and other evidence, Dr. Gordy testified that claimant's total disability was attributable to the accident of August 17, 1943. The referee again found that "claimant signed a final receipt under mistake of fact—that his injuries had ceased, and he was able to return to work". The findings of the referee as well as his order setting aside the final receipt and entering an award were affirmed by the board. The court entered judgment on the award.

Claimant had worked steadily in defendant's plant for a period of six months prior to the accident. His job was to determine the thickness of sheet metal by means of a micrometer. His duties were exacting. He had an extended prior medical history. Beginning in 1925 he had received treatment on occasion, in a number of different hospitals, for lack of urinary control or extravasation, from a stricture of the urethra. The stricture was either congenital or was traumatic in origin dating back to 1918 when claimant was injured in the collapse

of a building. The stricture and the resulting extravasation however had not been disabling; claimant did not lose any time during the six months of his employment with defendant. After the 1943 accident, claimant, for the first time, suffered severe headaches and dizziness which continued beyond the date of signing the final receipt, and were totally disabling.

At the first hearing before the referee Dr. Frederick Leavitt, a specialist in mental and nervous diseases, was called by claimant. He had examined claimant on April 21, 1945. He found a generalized arteriosclerosis and testified that this condition, coupled with the disorder of the urinary system, made claimant's brain more susceptible to injury. Claimant admittedly suffered a concussion of the brain when his head struck the floor at the time of the accident. In the opinion of this competent medical expert, claimant, as a result of the accident in question, suffered from a post-concussion syndrome and was still totally disabled from that cause. From the testimony we understand the post-concussion syndrome in this case to be a combination of symptoms grouped together as mental and emotional changes, caused by the head injury, resulting in neurological and psychiatric disorders. Dr. J. C. Snodgrass, defendant's medical witness, examined the defendant last on November 14, 1944. He believed that gonorrhea was the cause of claimant's stricture of the urethra and from a reference to a tentative diagnosis of syphilis appearing on a hospital record in 1932 it was the opinion of this witness that claimant's disabling headaches and vertigo were attributable to syphilis and not to the 1943 accident.

Dr. Samuel T. Gordy, the impartial medical expert appointed by the board, made a thorough physical examination of claimant and an electroencephalogram was made at Jefferson Medical Hospital. This witness had a complete medical history of claimant, in the hospital records which had been admitted in evidence. He also

had claimant's occupational history. In the light of all available facts it was Dr. Gordy's opinion that Dr. Leavitt was right in his diagnosis of post-concussion syndrome. Dr. Gordy found a syndrome of severe character, caused, in his opinion, by the 1943 accident and resulting in claimant's total disability, with little likelihood of rehabilitation. Referring to the hospital records which influenced Dr. Snodgrass' opinion, Dr. Gordy observed: "These show (a) that he had no symptoms or neurologic signs at the time of the serologic discovery of syphilia in 1932. There was no clinical evidence of syphilis then and there is none now; (b) the serology has been negative since 1940". Dr. Gordy conceded that it is well established that syphilis may be activated and aggravated by trauma, but he stated: "Even if syphilis were present in active clinical form, it would not alter my opinion" that claimant "has a post concussion syndrome of severe character with total and permanent disability". The weight of the medical testimony was wholly for the board, *Baughman v. Hockensmith,* 158 Pa. Superior Ct. 314, 44 A. 2d 764.

Appellant's contention that Dr. Gordy's opinion lacks probative value because he did not rule out gonorrhea as a cause of the strictured urethra and a factor in claimant's ultimate disability, is of no force. Even if the stricture had been disabling, which it was not, an obvious answer to the argument is the fact that there is no proof that claimant ever had gonorrhea. A clinical report of a medical board in a veterans' administration facility dated February 4, 1942, contains the following: "It is noted that in a record of hospitalization at the Methodist Episcopal Hospital dated November 3, 1928, a past history of gonorrhea is given. During all other periods of hospitalization present in the file gonorrhea is denied". Even if the hospital record, referred to, were in evidence it would not be competent proof that claimant had suffered from that disease. *Paxos v. Jarka Corporation,* 314 Pa. 148, 171 A. 468.

Claimant's mistaken belief that he had recovered sufficiently to return to work, in itself, was not sufficient to set aside the final receipt, (*Eberst v. Sears Roebuck & Co.*, 334 Pa. 505, 6 A. 2d 577; *Hamer v. West Virginia Pulp & Paper Co.*, 144 Pa. Superior Ct. 144, 18 A. 2d 452) and the referee fell into at least technical error, in setting aside the receipt on that ground. But the board, although it affirmed the findings of the referee, clearly indicated in its opinion that it based its affirmance of the order setting aside the final receipt, on an additional finding that claimant was totally disabled because of a severe post-concussion syndrome and that neither claimant nor his employer knew of the existence of that condition when the final receipt was executed. In that respect there was a mutual mistake of fact existing at the time the receipt was signed and the board properly concluded that the case was ruled by *Ralston v. Baldwin Locomotive Works,* 156 Pa. Superior Ct. 573, 41 A. 2d 361, in which a final receipt was set aside on almost identical facts.

The evidence which the board accepted, certainly is definite and specific and of the required quality and quantity necessary (cf. *Eberst v. Sears Roebuck & Co.,* supra) to set aside the final receipt.

Judgment affirmed.