Travellers Insurance Company, Appellant, *v.*
Heppenstall Company.

Argued October 5, 1948. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

434

*John R. Bredin,* with him *Dalzell, McFall, Pringle & Bredin,* for appellant.

*Elder W. Marshall,* with him *William A. Seifert, P. K. Motheral* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 9, 1948:

An insurance company is seeking in these proceedings to obtain, by judicial decree, the cancellation of one of its policies on the ground that the insured made fraudulent representations in his application for the policy.

Leo A. Daines applied to plaintiff, The Travellers Insurance Company, on August 22, 1945, for a policy of insurance upon his life in the amount of $50,000, naming defendant, Heppenstall Company, his employer, as beneficiary. On September 13, 1945 plaintiff issued the policy and defendant paid the initial premium of $2,214.50. Daines died on March 29, 1946 of a coronary thrombosis. Plaintiff, after tendering a return of the premium, filed a bill in equity for cancellation of the policy. The chancellor's findings of fact and conclusions of law, all favorable to defendant, were affirmed by the

court en banc, which entered a final decree dismissing the bill. Plaintiff appeals.

In order to understand the issues involved it is necessary to give a brief account of Daines' medical history. In 1940 he had a tonsillectomy. In 1941 he suffered from symptoms of indigestion; his physician, Dr. N. F. Fisher, diagnosed his trouble as a duodenal ulcer, to remedy which he prescribed medication and a diet; a couple of months thereafter X-rays were taken which showed that, if there had been an ulcer, it had cleared up. That same year he had an appendectomy. In 1943 he again exhibited symptoms of indigestion and hyperacidity, and, at Dr. Fisher's suggestions, he had an electrocardiogram taken; this, in Dr Fisher's opinion, showed no myocardial pathology. In 1945 he suffered a dizzy spell while driving his automobile; another electrocardiogram was taken on which a hospital interne made a notation of "possible coronary", but Dr. Fisher again diagnosed the condition as a mild attack of vertigo and not as evidencing any heart disturbance; Daines was in the hospital for only one day, received no medication other than a sedative, and immediately resumed his employment. He continued in apparently good health and without any interruption of his work from that time until his death some eight months later. He never had any heart pains nor showed any clinical symptoms of cardiac illness, and he had every reason to believe, when he made application for insurance in August, 1945, that he was in good health.

Plaintiff challenges the following answers given by Daines to questions in the application:

"11. Have you had periodic or occasional health examinations? Has any abnormal condition been found?" To both of these interrogatories the answer was "No". By "periodic or occasional health examinations" must be understood examinations, not in the course of actual attacks of illness, but for general cau-

tionary purposes. The answers as given therefore, were true.

"12. Have you ever had any special examinations such as X-rays, Electrocardiograms, sputum or blood studies?" The answer was "Yes", which was true.

"13. Have you received (a) Surgical advice or attention? (b) Medical advice or attention within five years?" The answer to each of these questions was "Yes", which was true.

"14. Have you ever been under observation or treatment in a hospital, sanatarium or other institution?" The answer was "Yes", which was true.

"15. Have you ever had or been told you had": [Here followed several named diseases none of which is here material except] "B. . . . Dizziness . . .", to which the answer was "No"; "C. Disease of the heart . . .", to which the answer was "No"; and "D. Appendicitis . . .", to which the answer was properly "Yes". The answers to "B" and "C" will be discussed later.

"16. Give details of all affirmative answers applicable to [the foregoing questions]". Underneath this request were columns showing the nature of the details required; the heading of the first column was "Illness or Condition", and the other columns asked for certain facts in regard to such illnesses or conditions and the name and address of the physicians consulted with regard thereto. In these columns Daines properly enumerated the tonsillectomy, the duodenal ulcer, and the appendectomy, and gave Dr. Fisher's name and address as his attending physician.

"19. Additional Statements by Proposed Insured." Here Daines gave information in regard to the duodenal ulcer and that he had had an X-ray taken in connection therewith.

It is, of course, well established that, in order to avoid a policy on the ground of alleged fraudulent repre-

sentations, the insurer must show, not only that the statements were false, but that the insured knew they were false or otherwise acted in bad faith in making them: *Evans v. Penn Mutual Life Insurance Company of Philadelphia,* 322 Pa. 547, 186 A. 133; *Bailey v. Pacific Mutual Life Insurance Company of California,* 336 Pa. 62, 6 A. 2d 770. Here the insured died of a coronary thrombosis which, it may well be, was the culmination of pre-existing cardiac pathology; the point is, however, that, if Daines did have any heart disease, he did not know or even suspect it, because Dr. Fisher always assured him to the contrary, and, while Dr. Fisher showed him the electrocardiograms, he told him at the same time that they evidenced no abnormality of any kind and, since he did not believe that a heart condition was indicated, he prescribed neither medicine nor enforced rest. Dr. George K. Fenn, a witness for plaintiff who was connected with the hospital where the electrocardiograms were taken and interpreted them, admitted his inability to say that they indicated any pathology. Although an insured may in fact be suffering from some insidious disorder or latent disease, if he is not aware of it the right of recovery on the policy is not affected: *Suravitz v. Prudential Insurance Company,* 244 Pa. 582, 91 A. 495; *Livingood v. New York Life Insurance Company,* 287 Pa. 128, 134 A. 474; *Evans v. Penn Mutual Life Insurance Company of Philadelphia,* 322 Pa. 547, 186 A. 133; *Prudential Insurance Company of America v. Adamshick,* 150 Pa. Superior Ct. 222, 27 A. 2d 438.

So far as Daines' negative answer to the question whether he ever had "dizziness" is concerned, while this was not wholly an accurate reply, it appears that the vertigo which attacked him while driving his automobile proved to be but a temporary indisposition; he was assured by Dr. Fisher that it was of no consequence but was due to hyperacidity and akin to seasickness; he

returned to work the following day and had no trouble of any kind thereafter.* Under such circumstances his answer to the question cannot be regarded as a misstatement of such a nature as to preclude recovery on the policy. It has frequently been held that an applicant for insurance is not required to report illnesses or conditions which one would not ordinarily regard as of real gravity or importance: *Evans v. Penn Mutual Life Insurance Company of Philadelphia,* 322 Pa. 547, 186 A. 133; *Adams v. Metropolitan Life Insurance Company,* 322 Pa. 564, 186 A. 144; cf. *Bradich, Administratrix, v. Metropolitan Life Insurance Company,* 128 Pa. Superior Ct. 513, 194 A. 522; *Prudential Insurance Company of America v. Adamshick,* 150 Pa. Superior Ct. 222, 27 A. 2d 438.

Plaintiff stresses the fact, as the basis of one of its chief complaints, that in giving details of his affirmative answers as requested in question 16, and in the additional statements which he made as requested in question 19, Daines failed to set forth information concerning his hospitalizations and the taking of the electrocardiograms. Except, however, for the one day in the hospital at the time of his dizzy spell and his other brief visits to have X-rays or electrocardiograms taken, his confinements there were only in connection with the surgical operations, for all of which he properly accounted; his answer to question 12 had indicated that electrocardiograms had been taken; and his answer to question 14 had stated that he had been "under observation or treatment in a hospital"; he also furnished the name and address of Dr. Fisher as his attending physician. Under such circumstances plaintiff has no ground whatever for complaint. Neither question 16 nor question 19 called

---

* Plaintiff, two months before issuing its policy, received a letter from Dr. Fisher advising it that Daines had "an occasional return of symptoms of a hyperacidity."

specifically for any such information as plaintiff now suggests should have been furnished. Where answers are incomplete in detail, but made without intention of concealing the truth, recovery on the policy is permissible, the question of good faith being for the fact-finding tribunal: *Livingood v. New York Life Insurance Company*, 287 Pa. 128, 134 A. 474; *Kuhns v. New York Life Insurance Company*, 297 Pa. 418, 147 A. 76; see *Walter v. John Hancock Mutual Life Insurance Company*, 160 Pa. Superior Ct. 532, 535, 52 A. 2d 366, 367. Plaintiff could have made such inquiries from Dr. Fisher as it might have thought necessary or desirable; *Baer v. State Life Insurance Company*, 256 Pa. 177, 184; 100 A. 745, 748.

Plaintiff assigns as error the refusal of the chancellor to admit in evidence the hospital record which contained the facts in regard to Daines' admission on the day he had the dizzy spell and narrated the history that he then gave; it also set forth the "impressions" or opinions of an interne. Objection is likewise made to the court's refusal to accept in evidence the electrocardiograms, especially the one of 1945 noting a clinical diagnosis of "possible coronary" which was also made by an interne. These refusals did not constitute error, because, so far as the electrocardiograms are concerned, Dr. Fisher advised the insured that they did not show any heart pathology; the diagnosis by the interne was especially inadmissible in the absence of any knowledge as to his expert skill and capacity to render an opinion, as well as because of the lack of any opportunity on the part of defendant to cross-examine his qualifications and the basis of his conclusions: *Paxos v. Jarka Corporation*, 314 Pa. 148, 154, 155, 171 A. 468, 471; *Lane v. Samuels*, 350 Pa. 446, 450, 39 A. 2d 626, 628; *McGine v. Industrial Health, Accident & Life Insurance Company*, 124 Pa. Superior Ct. 602, 607, 608, 189 A. 889, 891, 892; *Waples v. Police Beneficiary Association*, 156 Pa. Supe-

rior Ct. 592, 596, 41 A. 2d 342, 344; *Crimlisk v. Philco Corporation,* 162 Pa. Superior Ct. 162, 166, 56 A. 2d 279, 281. As to the hospital record, while some parts of it may have been admissible, it would have been error to admit the portion giving the interne's "impressions"; moreover, practically everything which the record contained was otherwise introduced into the case by oral testimony.

An offer by plaintiff of the testimony of a doctor who was called to give his opinion as to what the electrocardiograms showed was properly rejected. The question in the case was not what they showed but what the insured was told about them and what he honestly believed to be the fact; to have received such testimony, therefore, would only have led to diversion from the real issue. Nor was it error to admit the testimony of witnesses in regard to the general health of the insured as indicated by his appearance. A lay witness may testify as to the apparent physical condition of a person; he is barred only as to matters involving the existence or non-existence of a disease the discovery of which requires the training and experience of a medical expert: *Baer v. State Life Insurance Co.,* 256 Pa. 177, 186, 100 A. 745, 748, 749; *Baum v. Metropolitan Life Insurance Company,* 144 Pa. Superior Ct. 37, 41, 19 A. 2d 486, 487; cf. *Glickman v. Prudential Insurance Company of America,* 151 Pa. Superior Ct. 52, 54, 55, 29 A. 2d 224, 226.

The chancellor found that Daines acted throughout in perfectly good faith and that none of the representations he made was knowingly untrue. The testimony amply supports those findings and plaintiff is bound by them.

Decree affirmed; plaintiff to pay the costs.