## Schmerin v. New York Life Insurance Company

Before McDonald and McWilliams, JJ.

*Robert S. Glass*, for plaintiff.

*Weimer, Bennett, Jones & Stibich*, for defendant.

McDONALD, J., June 18, 1964.—On June 1, 1959, defendant issued "Non-Cancellable Income Protector Policy," no. DT-300 835, insuring plaintiff against total disability. The application for said policy dated May 18, 1959, was countersigned by defendant's agent. On May 15, 1961, plaintiff claimed total disability and filed written notice as required by the policy. Defendant refused to make payment, alleging the policy was void.

Plaintiff's complaint avers the policy was issued and in full force and effect at the time of his disability. He claims monthly payments from the date of disability, totaling $4,400, and that he is entitled to payments during the continuance of the disability at the rate of $400 per month. Defendant filed an answer and new matter to which plaintiff filed a reply. Defendant has

moved for judgment on the pleadings. This motion has been argued before the court en banc and briefs submitted.

Defendant's answer and new matter aver the policy was void because of plaintiff's misrepresentations in answer to questions 10, 16 (c), 18 (c), 25 (a) and (b) on the application. Further, that the answers were material to and increased the risk. These answers may be divided into two categories: (1) Failure to reveal other disability income insurance (question No. 10); (2) failure to disclose a condition of the back and treatment, examination or consultation in a hospital or by a physician (questions 16(c), 18(c), 25(a) and (b)).

The questions which were all answered in the negative follow:

Question 10: "Disability income insurance in force in all companies?"

Question 16(c): "Have you ever been under observation or treatment in any hospital, sanitorium or other similar institution?"

Question 18(c): "Have you ever had any lameness, deformity or loss of limb or, so far as you know, any back or spinal disorder?"

Question 25: "So far as you know, have you, within the last ten years (a) had any illness, disease or injury that is not included in your other answers?" and "(b) Consulted or been examined or treated by any physician or practitioner for any reason not given in connection with your other answers?"

In answer to question 22(h), plaintiff revealed a hernia operation in July, 1955, by Dr. Wheeling at Windber Hospital. No other hospitalization or medical history was given in answer to any question.

Defendant, in new matter, avers in paragraphs 9, 11, 13, 15 and 16, the answers were "knowingly false and made in bad faith with intent to deceive defendant

in the issuance of said policy . . ." and were material to the risk. In reply, plaintiff avers that he acted in good faith, without intent to deceive, and the answers were not material to the risk.

Paragraph 9 avers that the answer to question 10 was false for the reason that, at the time of application, plaintiff was insured under two disability policies by National Life Insurance Company, the one dated September, 1952, and the other dated February, 1956. To this paragraph, plaintiff replies he revealed this insurance to defendant's agent, and that the policies were "taken out by, and paid for by plaintiff's employer . . ."; and thereupon he was advised by the agent to answer the question as he did.

Paragraph 11 avers that the answer to question 16(c) was false for the reason plaintiff was confined to Windber Hospital on October 24, 1954, and the hospital records show he had a spinal disorder known as "spina bifida occulta," and on June 4, 1954, the same records disclosed he had a condition referred to as lumbar myositis. Copies of the hospital records are attached to defendant's new matter as exhibits A and B. In reply, plaintiff stated he had disclosed to defendant's agent that for a period of years he had submitted to periodic physical examinations by Dr. Wheeling, a staff member at the Windber Hospital; that he was not confined on the date alleged, that the aforesaid conditions are not related to his present disability; the diagnosis had not been disclosed to him and he was unaware it had been made.

Paragraph 13 avers plaintiff's answer to question 18(c) was false in that he failed to reveal the aforesaid spinal disorder. In reply to this, plaintiff averred that he had answered the question "as far as he knew" in good faith and without intent to deceive.

Paragraph 15 avers plaintiff's answers to questions 25(a) and (b) were false for the reason he failed to

reveal the aforesaid conditions disclosed by the hospital records, and that he had been examined and treated by a physician at the Windber Hospital on October 24, 1954, and on June 4, 1954. In reply, plaintiff avers that he acted in good faith and answered truthfully in accordance with his knowledge at the time.

Over plaintiff's signature on the application, appears the following: "I hereby declare that, to the best of my knowledge and belief, the information given above is correctly recorded, complete and true, and I agree that the Company believing it to be true shall rely and act upon it accordingly." Nowhere in the application or policy does it appear that answers to the questions are warranties, and we therefore conclude they are representations. In such case, it is the burden of the insurer, if he seeks to avoid the policy, to show that such statements were (1) false, (2) that the insured knew they were false or otherwise acted in bad faith in making them, (3) they were material to the risk: Shafer v. John Hancock Mutual Life Insurance Company, 410 Pa. 394; Allstate Insurance Company v. Stinger, 400 Pa. 533; Evans v. Pennsylvania Mutual Life Insurance Company, 322 Pa. 547; Equitable Life Assurance Society of U. S. v. Saftlas, 129 F. 2d 326.

Generally, inquiries as to prior medical attendance and hospitalization are material to the risk: Shafer v. John Hancock Mutual Life Insurance Company, supra; Reeder v. Metropolitan Life Insurance Company, 340 Pa. 503; Prevett v. Metropolitan Life Insurance Company, 343 Pa. 365. Where the answers to such inquiries are false and knowingly made, and the policy issued in reliance thereon, they are said to be presumptively fraudulent: Kizirian v. United Benefit Life Insurance Company, 383 Pa. 515. If, from competent and uncontradicted documentary evidence, or uncontradicted testimony of plaintiff's own witnesses, such falsity is established and the requisite bad faith af-

firmatively appears, then the court may direct a verdict for the insurer and void the policy: Shafer v. John Hancock Mutual Life Insurance Company, supra; Kizirian v. United Benefit Life Insurance Company, supra.

Ordinarily, the question of bad faith is a matter for the fact-finding tribunal to decide. However, it may be declared as a matter of law where, for example, the insured conceals that he is suffering from a serious illness of which he has knowledge: Indovina v. Metropolitan Life Insurance Company, 334 Pa. 167; or that he has been treated over a long period of time for a particular ailment and the nature of treatment and the circumstances are such as to lead to the irresistible inference that he failed to disclose treatment and hospitalization in bad faith and with intent to deceive.

Thus, in Derr v. Mutual Life Insurance Company, 351 Pa. 554, and Freedman v. Mutual Life Insurance Company, 342 Pa. 404, bad faith was declared as a matter of law when insured failed to reveal treatment for cardiac and coronary conditions over a long period of time.

In Shafer v. John Hancock Mutual Life Insurance Company, supra, plaintiff's decedent failed to reveal that he frequently consulted with his doctor over a period of years to the time of the application; he was hospitalized 4 times within the year of the application, and within 2 years had 14 x-rays and 5 electrocardiograms. It was further revealed that he had been advised by his physician of a high blood pressure condition. In Magee v. National Life Accident Insurance Company, 201 Pa. Superior Ct. 140, plaintiff's decedent failed to reveal hospitalization, serious surgery, and other medical attendance within the year of his application. In both these cases there was an irresistible inference of bad faith, and it was declared as, a matter of law.

However, failure to disclose every attendance and treatment by a physician does not alone constitute fraud. For instance, when the treatments are for trivial ailments or merely routine check-ups, the courts have refused to set aside or direct verdicts and to declare bad faith as a matter of law, even though answers about medical attendance and even specific conditions were false: Burton v. Pacific Mutual Life Insurance Company, 368 Pa. 613; Travelers Insurance Company v. Heppenstall, 360 Pa. 433; Adams v. Metropolitan Life Insurance Company, 322 Pa. 564; Evans v. Pennsylvania Mutual Life Insurance Company, supra; Prudential Life Insurance Company of America v. Adamshick, 150 Pa. Superior Ct. 222; Bradich Admrx. v. Metropolitan Life Insurance Company, 128 Pa. Superior Ct. 513; McBride v. Sun Life Insurance Company, 90 Pa. Superior Ct. 35. In Allstate Insurance Company v. Stinger, supra, involving an automobile liability policy, it was held that binding instructions on the question of bad faith were not warranted by a mere showing that a false answer was knowingly made.

In Burton v. Pacific Mutual Life Insurance Company, supra, the court refused to set aside a verdict and declare bad faith as a matter of law, even though defendant had failed to answer truthfully a question which asked if he had ever "spit blood." It was revealed at trial that at the time of the application the plaintiff's decedent was suffering from an incurable cancer of the throat, of which he had no knowledge, but had disclosed medical attention for what he considered to be a minor ailment.

In Travelers Insurance Company v. Heppenstall, supra, while defendant had disclosed he was treated by a doctor, he was unaware of a heart condition. He failed to disclose that on one occasion he had an attack of "dizziness," which was specifically asked in the application, for which he was attended by a doctor. The

court stated the insured was not required to report all illnesses which would not ordinarily be regarded as grave or of importance, and refused to set aside the verdict on the question of bad faith.

In Evans v. Pennsylvania Mutual Life Insurance Company, supra, a motion for judgment n. o. v. was denied, although it was admitted insured knowingly concealed he was suffering from a dislocated vertebra, it was proved that condition eventually caused his death. Here, again, the question of bad faith was for the jury on the question of whether or not the condition was, or appeared to the insured, to be too trivial to report.

In Adams v. Metropolitan Life Insurance Company, supra, a motion for judgment n. o. v. was denied, even though insured knowingly failed to reveal that she had consulted a doctor 15 times within 3 months prior to the application.

In Bradich Admrx. v. Metropolitan Life Insurance Company, 128 Pa. Superior Ct. 513, plaintiff's decedent failed to reveal in answer to questions in his application dated October 12, 1932, that he had been treated on numerous occasions for an ear infection by a physician during July and August of that year. Upon appeal from a verdict for plaintiff, the court refused to grant judgment n. o. v., holding the question of good faith was for the jury.

Thus, bad faith has been declared as a matter of law where the illnesses were serious and the medical attendance or hospitalization so extensive and over such a long period of time that failure to reveal raised an irresistible inference of fraud and bad faith. Where, however, as in the case at bar and in those cited above, the illnesses were minor or, as here contended, not revealed to plaintiff and the medical attendance or hospitalization was incident to a routine medical check-up five years before the policy was issued, we cannot find

as a matter of law there was bad faith and an intent to deceive.

Question 16(c), which requests information on hospital confinements is unlimited in time and presumably, if we were to reduce its requirements to an absurdity, plaintiff's sojourn in a hospital after birth, or even a childhood tonsillectomy would have to be reported. This would seem to be unreasonable. Plaintiff's reply raises a question of what may be considered a confinement, since he contends the only reason the routine medical check-up, with x-rays, was made at the hospital was because Dr. Wheeling happened to be a staff physician there.

Question 18(c) was answered, according to plaintiff, in good faith and "as far as he knew." Since he contends the diagnosis of spina bifida occulta and lumbar myositis had not been revealed to him after the examinations at the Windber Hospital, whether he had a lameness or a spinal disorder of which he had knowledge and failed to reveal would be a question of fact bearing on his good faith.

To answer question 25(a), he would have to know the conditions set forth in the hospital report. It is not sufficient to show by the report that he had the conditions without further proof of knowledge. In 25(b), as stated above, bad faith is not shown as a matter of law merely because routine medical check-ups were not revealed, particularly when a condition disclosed by the examination was unknown to plaintiff.

We are also satisfied that bad faith may not be declared as a matter of law for failure of plaintiff to reveal other insurance in answer to question 10. As plaintiff contends, the question is tersely worded and a reasonable interpretation could mean that he is not required to reveal policies taken out by his employer.

The leading case cited by defendant is March v. Metropolitan Life Insurance Company, 186 Pa. 629.

In that case the court held that failure to reveal other insurance was sufficient reason to void the policy. In the light of the five principles enunciated in Evans v. Pennsylvania Mutual Life Insurance Company, supra, this case is no longer controlling, and particularly in view of the footnote on page 551 where the court points out that the false statements relied on in the March case were treated as warranties and not as representations.

Most of the cases holding policies void for failure to reveal previous insurance have been decided because the answers to such questions were warranties rather than representations, thus requiring no proof of bad faith, and in all instances applications for previous insurance had either been rejected or, if policies were issued, they had been cancelled: Moncour v. Indemnity Company, 269 Pa. 213; Glou v. Security Benefit Association, 114 Pa. Superior Ct. 139; Wyss-Thalman v. Maryland Casualty Company, 193 Fed. 55. The same rule has been applied to cases where the applicant failed to reveal that he had applied for insurance and the policy was not issued or the application rejected: Stawartz v. Western Life Indemnity Company, 89 Pa. Superior Ct. 109.

We concede the importance of knowing whether an applicant had been rejected for insurance or policies cancelled. This would certainly affect the insurer's judgment in issuing a policy on a person who was not considered insurable by other companies. However, when insurance has been issued previously, it would seem this is good evidence of insurability. Then, too, the above cases have been decided because the answers were warranted, which did not require proof of bad faith, only that the answers were false. The rule on misrepresentations is less severe.

It would seem the reason given by plaintiff for failure to reveal other insurance is a reasonable one, even

though there is some question whether the advice of the agent would relieve him. However, in Allstate Insurance Company v. Stinger, supra, the false answer was allegedly given because the agent, according to defendant, wrongly interpreted the question. Citing Evans v. Pennsylvania Mutual Life Insurance Company, supra, the court held there was no proof of bad faith as a matter of law. It is interesting to note that defendant was permitted to testify the agent had misstated the question.

We are satisfied that plaintiff's negative answers to questions 10, 16(c), 18(c), 25(a) and 25(b) are not sufficient reason for this court to declare as a matter of law that he acted in bad faith. We are satisfied this is a matter for the fact-finding tribunal.

Accordingly, the following:

*Order*

Now, June 18, 1964, after argument and upon consideration of the record and briefs, defendant's motion for judgment on the pleadings is dismissed.

Judge McWilliams concurred.