J-A24026-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| MARGIE ANNE MARRONE, GUARDIAN OF THE ESTATE OF EDWARD S. KAPCZYNSKI, AN INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FRANK DALONZO, JR., AND TINA M. SABOL | |
| Appellees | No. 404 WDA 2017 |

Appeal from the Order Dated February 17, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-15-008026

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                    FILED NOVEMBER 21, 2017

Appellant Margie Anne Marrone, guardian of the estate of Edward S. Kapczynski, an incapacitated person, appeals from the order entered on February 17, 2017, that entered summary judgment in favor of Appellees Frank Dalonzo, Jr., and Tina M. Sabol (Kapczynski's biological cousins) in Appellant's action to rescind a transfer of real property and for damages for conversion of personal property. Marrone contends that Dalonzo and Sabol took advantage of Kapczynski by having him sign his property over to them at a time when he was mentally incapable of making decisions for himself. We reverse and remand.

We recite the facts as stated by the trial court, which adopted the facts

from a brief filed on behalf of Kapczynski.[1]

Kapczynski worked as a draftsman in a bridge manufacturing company, where he was required to perform at a high intellectual level. He acquired the Moon Township property at issue in 1974 and personally designed and supervised the construction of his home on that property. The property was free and clear of liens, mortgages, and encumbrances, and valued at approximately $220,000.00.

Kapczynski has alleged that, in or around 2009, Kapczynski became seriously ill and was hospitalized. After he was transferred to a rehabilitation center, Appellees Dalonzo and Sabol acted as his agents. During this time, Appellees approached Kapczynski and proposed that if either party died, the other would take title to that party's home for consideration of $1.00. Kapczynski did not accept the proposal at that time. Trial Ct. Op. at 1-2.[2]

On March 10, 2010, Kapczynski was released from his job due to layoffs. Trial Ct. Op., Ex. A. On May 14, 2010, Kapczynski's medical records

_____

[1] The trial court quoted the facts stated in Kapczynski's Brief without necessarily agreeing with or relying entirely upon all of them. See Trial Ct. Op. at 1-3. In reciting the facts in this memorandum, we have sought to reference only those that appear to have been accepted and relied upon by the trial court in rendering its decision. We also rely on a "Timeline of Events" to which the parties agreed, which is attached to the trial court's opinion as Exhibit A. N.T., 2/16/17, at 5-6.

[2] Appellees dispute this allegation and have presented evidence that Kapczynski's hospitalization occurred years after the dates alleged in Kapczynski's complaint.

from his primary care physician "indicate everything was normal relating to [Kapczynski]'s mental/neurological state. No indication of memory loss, dementia and/or confusion." Id.

On June 21, 2010, at the age of 77, Kapczynski signed a deed transferring all rights, title, and interest to his house to Appellees for consideration of only $1.00. Appellees arranged for Kapczynski to be taken to an attorney's office in Ambridge, Beaver County, to execute the deed. Kapczynski was not represented by independent legal counsel at this time. Trial Ct. Op. at 2. Appellees' counsel during the real estate transaction, Robert Taylor, states that he spoke with Kapczynski on the day of the transaction and he "appeared to be lucid, coherent and of sound mind" and "verbally stated and intelligibly articulated that he wanted to transfer his residence to" Appellees. App. to Br. in Supp. of Mot. for Summ J., 12/1/16, Ex. F, Aff., 9/27/16, at 1 ¶¶ 4-7. After signing the deed, Kapczynski continued to live in the home, paying all costs for maintenance and property taxes. Trial Ct. Op. at 2.

On July 1, 2010, Kapczynski's medical records from his primary care physician "indicate everything was normal relating to [Kapczynski]'s mental/neurological state. No indication of memory loss, dementia and/or confusion." Trial Ct. Op., Ex. A.

Kapczynski was diagnosed with dementia on August 22, 2013. Trial Ct. Op. at 4; id., Ex. A; Dep. of Dr. James Priola (testimony by Kapczynski's physician that Kapczynski "started having problems with his memory . . .

around 2013" and that the "diagnosis of dementia was made in . . . August of 2013").

In the summer of 2014, Kapczynski attempted to list his house for sale, but was told he did not in fact own the home. The realtor advised Kapczynski that the property had been transferred to Appellees in 2010. Kapczynski claims that he then reviewed his accounts and discovered that Appellees had been using a written Power of Attorney to divert funds from his personal bank accounts to their own without his knowledge or consent. Trial Ct. Op. at 2.

On May 6, 2015, Kapczynski commenced this action by complaint. On July 1, 2016, Kapczynski was deposed and was unable to testify as to any pertinent facts. Trial Ct. Op., Ex. A. On October 4, 2016, Marrone was appointed as Kapczynski's guardian, and the caption of the complaint was later amended to substitute her as the plaintiff.

On October 18, 2016, Appellees moved for summary judgment. A response was filed on behalf of Kapczynski on November 17, 2016, and attached to it were two affidavits that had been executed on November 15, 2016. The first affidavit, by Frank Cupelli stated:

> My name is Frank Cupelli. . . . I have known Edward Kapcz[y]nski for over 7 years. Via family Rich and his sister Margie Ann Marrone.
>
> I observed Edward in 2010, and know [h]is mental state was such that he was sometimes confused and he was unaware of the significance of what he was doing.
>
> He was not capable of making important decisions.

- 4 -

The second affidavit, executed by Terry Hailstock, stated, in its entirety: "In 2010 I knew 'Ed Kapczynski' from doing odds job's [sic] and cutting grass for him. Sometimes he knew who I was and other times he did'nt. [sic] He just look at me funny. I just thought its [sic] was the medicine he was taking."

On February 13, 2017, Appellees filed a reply contending that "the affidavit of Mr. Cupelli is not admissible . . . and can not therefore be used to defeat summary judgment." Defs.' Reply, 2/13/17, at 7. Additionally, Appellees argued that the Hailstock affidavit "provides no admissible evidence at all relating to whether [Kapczynski] knowingly and voluntarily executed the Deed in this case." Id.

On February 16, 2017, the trial court held oral argument on the summary judgment motion, during which Appellees' counsel stated: "When I look at the affidavit of Frank Cupelli, he says [Kapczynski] was not capable of making important decisions. . . . He cannot produce an affidavit with an opinion like that. That's not admissible." N.T., 2/16/17, at 34. At the end of the hearing, the trial court granted summary judgment in favor of Appellees.

Marrone now raises the following issues on appeal:

1.   Whether the Court of Common Pleas erred as a matter of law and/or abused its discretion when it granted Appellee[s'] motion for summary judgment having raised averments of material fact which remained at issue at the time of summary judgment?

2.      Whether the Court of Common Pleas[] erred as a matter of law and/or abused its d[i]secretion when, in granting Appellee[s'] motion for summary judgment, it failed to view and/or resolve genuine issues of material fact in a light most favorable to the non-moving party?

Appellant's Brief at 4 (suggested answers omitted).  As both of these issues challenge the trial court's decision to grant summary judgment upon allegations that there remained genuine issues of material fact, we address them together.

Our standard of review with respect to a trial court's decision to grant or to deny a motion for summary judgment is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion.  As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule.  The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.  Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.  Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.  Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Nobles v. Staples, Inc., 150 A.3d 110, 120 (Pa. Super. 2016) (citations omitted).  Here, the parties agree that the sole genuine issue of material fact at issue is whether Kapczynski had the mental capacity to enter a legally

- 6 -

binding transaction in June 2010. See Appellant's Brief at 10; Appellees' Brief at 11.

Marrone contends that the affidavits support her contention that Kapczynski did not have the mental capacity to enter into any legal agreement. She maintains that "testimony from the affiants coupled with expert testimony at trial presents facts that alter the outcome, thus defeating summary judgment." Appellant's Brief at 10, 15. Presumably, Marrone means by this that the affidavits plus testimony she will present if a trial is held will be sufficient to enable a fact-finder to rule in her favor. On summary judgment, however, the party bearing the burden of proof may not rely on a pledge to present sufficient evidence if a trial occurs in the future; the party must present sufficient evidence to forestall summary judgment in her opposition to the motion. See Nobles, 150 A.3d at 120; see also Nationwide Ins. Co. v. Schneider, 906 A.2d 586, 590 (Pa. Super. 2006) (en banc), aff'd, 960 A.2d 442 (Pa. 2008); Grandelli v. Methodist Hosp., 777 A.2d 1138, 1144 (Pa. Super. 2001). Here, the only evidence Marrone has presented consists of the affidavits by Cupelli and Hailstock. The question is whether those affidavits were sufficient to preclude entry of summary judgment for Appellees.

Appellees argue that the affidavits are not sufficient because they are inadmissible due to the fact that the affiants are not qualified experts. Appellees cite Baum v. Metropolitan Life Ins. Co., 19 A.2d 486, 487 (Pa. Super. 1941), for the principle that a lay witness' testimony "must be

confined to the facts within his knowledge, and may not be extended to matters involving the existence or non-existence of a disease, which is only discoverable through the training and experience of a medical expert." Appellees' Brief at 11. Appellees also reference Travellers Ins. Co. v. Heppenstall Co., 61 A.2d 809, 813 (Pa. 1948), to reiterate that "lay witnesses are barred from testifying to the existence or nonexistence of a disease or disorder, the discovery of which requires the training and experience of a medical expert." Appellees' Brief at 11. Appellees maintain that the affidavits of Cupelli and Hailstock are vague, "woefully insufficient," and "fail to . . . establish a foundation that either affiant is qualified and/or competent to render the medical opinions set forth therein." Id. at 7, 11; see also id. at 12 ("[a]s [Kapczynski] has offered no information whatsoever to suggest that Mr. Cupelli qualifies as an expert medical witness, he is, thus, barred from testifying as to [the] assertions" in his affidavit). Appellees conclude that the affidavits thus cannot "establish a genuine issue of material fact as to whether Mr. Kapczynski lacked the mental capacity to deed his house to Appellees." Id. at 11.

The trial court's explanation for its decision, in its entirety, is as follows:

> Cupelli's testimony that Kapczynski "was not capable of making important decisions" and was "unaware" of the significance of what he was doing" would not be admissible at trial because [Kapczynski] has not shown that Cupelli was qualified to render such opinions. That Kapczynski was "sometimes confused" in 2010, as attested to by Cupelli or that Kapczynski sometimes did not recognize Hailstock is not sufficient evidence to establish

that Kapczynski lacked the mental capacity to deed his property to [Appellees]. Moreover, the affiants do not specify when in 2010 they made their observations.

Contrary to what is asserted in [Kapczynski's] Brief [in Opposition to Appellees' Motion for Summary Judgment], no evidence has been presented that Kapczynski was diagnosed with dementia any earlier than August 22, 2013, more than three years after he deeded his property to [Appellees]. Nor has [Kapczynski] presented any evidence that Kapczynski and [Appellees] agreed to any arrangement whereby "the parties would, in the event of the death of either party, allow one party to take title to the other party's home, for the consideration of one dollar." [Kapczynski's Br. in Opp'n to Appellees' Mot. for Summ. J., 12/2/16,] at 3. Likewise, [Kapczynski] has presented no evidence that any fraud occurred at the time Kapczynski deeded his property to [Appellees] on June 21, 2010.

Trial Ct. Op. at 3-4.

The threshold question we must decide is whether the Cupelli and Hailstock affidavits are admissible evidence that may be considered in determining whether the record contains disputed material facts that preclude entry of summary judgment. We stated the applicable law in In re Mampe, 932 A.2d 954 (Pa. Super. 2007), appeal denied, 944 A.2d 758 (Pa. 2008):

[A] lay witness may testify regarding matters of health, so long as his testimony is confined to facts within his knowledge, but the witness may not testify to matters involving the existence or nonexistence of a disease, which is discoverable only through the training and expertise of a medical expert.

Id. at 960. We held in Mampe that the trial court did not err by accepting lay opinions and anecdotes regarding Mrs. Mampe's weakened intellect without any medical expert testimony concerning her mental state. The lay opinion testimony was "limited to behaviors that [Ms. Mampe] exhibited that

- 9 -

were contrary to previous behaviors she exhibited throughout her life." Id. Similarly, in Cominsky v. Donovan, 846 A.2d 1256, (Pa. Super. 2004), we stated:

> A lay witness may testify as to certain matters involving health, the apparent physical condition of a person, and as to obvious symptoms, but his testimony must be confined to facts within his knowledge, and may not be extended to matters involving the existence or non-existence of a disease, which is only discoverable through the training and experience of a medical expert. Thus, a layperson may not testify to the presence of an underlying disease such as a heart condition or osteomyelitis. See [] In re Commitment of Barbour, 733 A.2d 1286 (Pa. Super. 1999) (a lay witness may testify about the apparent physical condition of a person, but may not testify regarding a medical diagnosis, such as the existence of bipolar disorder). This is because such conditions are not readily observable by the naked eye or even by a physical examination unless symptoms are ascertained and appropriate tests made.

Id. at 1259 (internal quotation marks and some citations omitted).

Cupelli's affidavit explains how the affiant knows Kapczynski and then states: "I observed Edward in 2010, and know [h]is mental state was such that he was sometimes confused and he was unaware of the significance of what he was doing." These statements concern Cupelli's personal observations of Kapczynski; they do not opine on his medical condition in such a way as would require medical training or expertise. The trial court therefore erred in holding that it could not consider this portion of Cupelli's affidavit in resolving the summary judgment motion.

Cupelli also states that Kapczynski "was not capable of making important decisions." This statement is more problematic. There is nothing in the affidavit to support Cupelli's opinion regarding whether Kapczynski

"was capable of making" any decisions. Capability is a question that relates to a person's mental state, health, and intellect, and Cupelli's affidavit provides no foundation for an opinion by him regarding such matters. The trial court therefore was correct in holding that it could not consider this portion of Cupelli's affidavit in resolving whether material issues of fact prevented entry of summary judgment.

The Hailstock affidavit, after explaining how Hailstock knew Kapczynski, stated: "Sometimes he knew who I was and other times he did[n']t. He just look[ed] at me funny." Again, these are facts observed by the affiant that do not require prior medical training or expertise. On the other hand, Hailstock's additional opinion that he thought Kapczynski's difficulties were caused by "the medicine he was taking" was not a personal observation and was not within the purview of appropriate lay testimony under Mampe and Cominsky. This portion of Hailstock's affidavit therefore could not be considered by the trial court in resolving whether material issues of fact prevented entry of summary judgment.

We therefore conclude that portions of the two affidavits were admissible to the extent that they did not set forth a medical diagnosis requiring the training and experience of a medical expert. See Mampe, 932 A.2d at 960; Cominsky, 846 A.2d at 1259. The remaining question is whether those admissible portions of the affidavits were sufficient to create a material factual dispute relating to Kapczynski's mental capacity that would preclude entry of summary judgment.

Neither party has referred this Court to any case law holding that a person's mental capacity to execute a deed can be established only through expert testimony. See Appellant's Brief at 12-19; Appellees' Brief at 8-16.[3] In Sobel v. Sobel, 254 A.2d 649, 651 (Pa. 1969), an action for rescission of a trust, the Supreme Court stated:

> We said [in Girsh Trust, 189 A.2d 852 (Pa. 1963),] that where mental competency is at issue, the real question is the condition of the person at the very time he executed the instrument or made the gift in question. We further held that although competency is presumed and the burden is upon him who seeks to establish otherwise, the presentation of evidence tending to show lack of competency for a reasonable time before and after the critical time shifts the burden of proof to the person who alleges that the transaction occurred during an interval when the person was mentally competent. We further held that a person's mental capacity is best determined by his spoken words and his conduct, and that the testimony of persons who observed such conduct on the date in question out-ranks testimony as to observations made prior to and subsequent to that date.

We conclude that, under Sobel, the affidavits by Cupelli and Hailstock are sufficient to create a material issue as to Kapczynski's mental capacity in 2010, when he signed the deed. Cupelli's affidavit states that at that time, Kapczynski "was sometimes confused and he was unaware of the significance of what he was doing." Havistock's affidavit states that, "Sometimes [Kapczynski] knew who I was and other times he [did not and] just look[ed] at me funny." Together, the affidavits call into question Kapczynski's mental state.

_____

[3] Consequently, the fact that "no evidence has been presented that Kapczynski was diagnosed with dementia any earlier than August 22, 2013," Trial Ct. Op. at 4, is not determinative.

We recognize that this evidence is slim. It contrasts with significant evidence proffered by Appellees that tends to show that Kapczynski was competent at the time that he signed the deed, including medical records from dates before and after the transaction and the affidavit by Robert Taylor stating that on the date of the transaction Kapczynski "appeared to be lucid, coherent and of sound mind" and "verbally stated and intelligibly articulated that he wanted to transfer his residence to" Appellees. App. to Br. in Supp. of Mot. for Summ J., 12/1/16, Ex. F, Aff., 9/27/16, at ¶¶ 4-7. But on summary judgment, a court must "view the record in the light most favorable to the non-moving party, and [resolve] all doubts as to the existence of a genuine issue of material fact . . . against the moving party." Nobles, 150 A.3d at 120. The court may not weigh the evidence. We therefore conclude that, on this record, this is not a case that should have been decided without a trial. Accordingly, we reverse the order granting summary judgment to Appellees and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017