703 A.2d 16

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald R. ALLISON, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 26, 1995.

Resubmitted Nov. 6, 1996.

Decided Nov. 24, 1997.

Jeanette Dickerson, Hatboro, for Appellant.

Marianne Killinger, Patricia E. Coonahan, Norristown, for Appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

ZAPPALA, Justice.

We granted allocatur to address the issue of whether the trial court erred in allowing a lay person to testify as to the condition of a rape victim's hymen. We find that the trial court abused its discretion in admitting such testimony. Therefore, we vacate the judgment of sentence and remand for a new trial.

Following a jury trial, Appellant, Donald R. Allison, was convicted of statutory rape, involuntary deviate sexual intercourse, and aggravated indecent assault. Appellant's motion for a new trial and arrest of judgment was denied and he was sentenced to an aggregate imprisonment term of seven to fourteen years. Appellant appealed to the Superior Court, which affirmed the judgment of sentence.

The record reveals that the complainant, the seven-year-old daughter of Appellant's common-law wife, lived with her aunt, Mildred Harvey, in North Carolina. In 1991, the complainant, with her two sisters and her brother, came to visit their mother in Norristown, Pennsylvania for the months of July and August. Upon returning to North Carolina, Harvey noticed blood stains on the complainant's underwear. Harvey took the complainant to a physician, who informed the aunt that the bleeding could have been caused by a sexual assault. The complainant subsequently told her aunt that Appellant had touched her and sexually assaulted her in August, 1991.

At trial, the complainant's examining physician did not testify. Harvey testified as to her observations of the condition of the complainant's hymen which she made during the physician's gynecological examination of the complainant. On direct examination, the aunt's testimony concerning her observations during the physician's examination of the complainant was as follows:

Q. Do you know whether the doctor performed a physical examination of [complainant]?

A. Yes, she did.

Q. Who was present for that physical examination?

A. I was and her assistant, nurse.

Q. During the time of the physical examination, were [complainant's] pants or panties on or off?

A. They were off.

Q. Did you have a chance to observe her vaginal area?

A. Yes, I did.

Q. Do you know what a hymen is?

A. Yes, I do.

[DEFENSE COUNSEL]: Your Honor, great latitude was given during direct examination of the victim as a result of—

THE COURT: Are you objecting?

[DEFENSE COUNSEL]: Yes.

THE COURT: Don't lead as much.

[PROSECUTOR]:

Q.  Do you know what a hymen is?

A.  Yes.

Q.  What is it, as best you can describe?

A.  It is the thin layer of skin over the opening of the vagina.

Q.  What was the condition of [complainant's] vaginal area with regard to her hymen?

A.  It was split.

Q.  What do you mean by it was split?

A.  It showed that a penetration had been made—

[DEFENSE COUNSEL]: Your Honor, I'm objecting.

THE COURT:  Sustained.

[PROSECUTOR]:

Q.  What is it that you mean by split?

A.  It showed that someone had forced—

[DEFENSE COUNSEL]: Your Honor, I'm objecting.

THE COURT:  Yes and I'm sustaining it.

[PROSECUTOR]:  I agree.

Q.  Mrs. Harvey, just explain what you saw with your eyes that gave you the impression that it was split.

A.  Well, it wasn't—

Q.  As best you can.

A.  It was opened.  It was just open, not a normal—it was a penetration that had been made.

[DEFENSE COUNSEL]: Your Honor—

THE COURT:  That's not what you observed.  Sustained.

[PROSECUTOR]:

Q.  I assume the last phrase.

THE COURT:  The last phrase, yes.

THE WITNESS:  It was a large opening.

(N.T., 1/4/93, pp. 77–79.)

        At the outset, we note the applicable standard of review.  The admission or exclusion of evidence is a matter for

8

the discretion of the trial court. This court will only reverse for a clear abuse of the trial court's discretion. *Commonwealth v. Foy*, 531 Pa. 322, 325, 612 A.2d 1349, 1351 (1992).

■ Appellant argues that the trial court erred in allowing Harvey, a lay person, to testify concerning the condition of the complainant's hymen. Appellant contends that Harvey's testimony was in the nature of an opinion and that to be admissible, such testimony had to be given by a medical expert.

The Commonwealth counters that Harvey's testimony as to the condition of the complainant's hymen was not an opinion for which an expert was required. Rather, the Commonwealth asserts that Harvey testified as a lay person regarding her personal observation of facts and that such testimony is admissible.

■ As a general rule, a lay person may testify as to distinct facts observed by him concerning the apparent physical condition or appearance of another. *Travellers Insurance Co. v. Heppenstall Co.*, 360 Pa. 433, 440, 61 A.2d 809, 813 (1948) ("A lay witness may testify as to the apparent physical condition of a person; he is barred only as to matters involving the existence or nonexistence of a disease the discovery of which requires the training and experience of a medical expert."); *Commonwealth v. Green*, 251 Pa.Super. 318, 323, 380 A.2d 798, 801 (1977) ("The existence of a readily observable physical condition, the evaluation of which does not require a complex application of technical knowledge, can as easily be ascertained by the lay person as by the trained physician."); *Baum v. Metropolitan Life Ins. Co.*, 144 Pa.Super. 37, 41, 19 A.2d 486, 487 (1941) ("Lay witness may testify as to certain matters involving health, the apparent physical condition of a person, and as to obvious symptoms, but this testimony must be confined to facts within his knowledge, and may not be extended to matters involving the existence or non-existence of a disease, which is discoverable through the training and experience of a medical expert.").

During an in chambers conference prior to Harvey's testimony, defense counsel objected to her testimony regarding

the rupture of the hymen. The trial judge ruled that the testimony was admissible. On direct examination, the prosecutor asked Harvey to explain what she meant when she described the complainant's hymen as being split. Harvey responded that "[i]t showed that a penetration had been made." Defense counsel objected. The trial judge sustained the objection. The prosecutor then repeated the same question and once again Harvey responded, "[i]t showed that someone had forced ——." Defense counsel's second objection was sustained.

We find that Harvey's testimony regarding her observations of the condition of the complainant's hymen. i.e., that it was split and opened, was improperly admitted into evidence. The excerpted testimony demonstrates that the testimony was introduced so that the jury would draw the inference that the complainant's hymen had been split as a result of penetration. The Commonwealth did not introduce expert medical testimony to explain to the jury whether the condition of the complainant's hymen was indicative of sexual assault, or could not have resulted from other causes. In the absence of such expert testimony, the jury was left without any understanding or guidance as to what inferences could fairly be drawn from the fact that Harvey observed a split in the complainant's hymen.

Harvey did not testify that she had observed the condition of the complainant's hymen prior to the alleged sexual assault and that the hymen was noticeably different thereafter. Nor was Harvey competent to offer an opinion as to the normalcy or abnormalcy of the hymen when the physical examination was conducted. Yet, the impact of her testimony was to suggest that Harvey had personally observed physical signs of a sexual assault, thereby reinforcing the complainant's account of the events.

The trial judge erred in ruling initially that the testimony was admissible. Without qualified expert testimony to explain the significance of Harvey's personal observations, the jury was permitted to engage in speculation that the condition of the complainant's hymen was the result of sexual assault.

Although the trial judge sustained defense counsel's objections to portions of Harvey's testimony, it was too late to avoid its devastating prejudicial impact on the jury.

For these reasons, we reverse the order of the Superior Court. The judgment of sentence is vacated and the matter is remanded for a new trial.

NIGRO, J., files a Concurring Opinion.

NEWMAN, J., files a Concurring Opinion.

CAPPY, J., files a Dissenting Opinion.

NIGRO, Justice, concurring.

I concur in the result reached by the majority that the trial court abused its discretion in admitting a lay witness's testimony regarding the condition of complainant's hymen. The majority finds that the lay witness's testimony is not admissible because it improperly tainted the jury as to the cause of the condition of complainant's hymen, for which expert testimony is required. I write separately, however, because I believe the error goes beyond the lay witness's semantics. I would hold that, due to the nature of this part of the body, a lay witness may not testify as to the condition of the hymen.

As a general rule, a lay witness may testify as to readily observable factual details he or she has noted regarding the apparent physical condition or appearance of another "the evaluation of which does not require a complex application of technical knowledge, [and so] can as easily be ascertained by the lay person as by a trained physician." *Commonwealth v. Green*, 251 Pa.Super. 318, 323, 380 A.2d 798, 801 (1977). Testimony as to the appearance of the hymen, particularly in the case of alleged child sexual abuse, however, is not within the purview of a lay witness. The hymen is *not* readily observable and *does* require a complex application of technical knowledge only ascertainable by the trained physician.[1] Med-

1. *See* William F. Enos, MD, Theodore B. Conrath, BA, and James C. Beyer, MD, *Forensic Evaluation of the Sexually Abused Child,* 78 J. AMER. ACAD. PEDIATRICS at 385–98 (1986). *See also* John McCann, MD,

ical literature on child sexual abuse emphasizes that proper tension, timing, and position is necessary to adequately visualize the child's genital area. Thus, an onlooker in the examining room, no matter where she is positioned, cannot even achieve a vantage point sufficient to observe the hymen.[2] Ms. Harvey's presence and observations in the examining room while the physician examined the genitalia of the complainant does not qualify her to testify as to the condition of complainant's hymen.

The majority finds that the words Ms. Harvey used to describe what she says she saw in the examining room transform what would have been acceptable testimony from a lay witness into unacceptable causation testimony. The majority implies that, were words more descriptive of the tissue and less concerned with what was allegedly done to it chosen instead, the lay testimony would have been admissible. I disagree. Medical literature abounds which confirms that variations on the appearance of a normal intact hymen are so numerous that examination and determination of the condition of the hymen requires complex application of medical and anatomical knowledge by physicians. *See, e.g.*, Henry Gray, ANATOMY OF THE HUMAN BODY, p. 1319 (Lea & Febiger, 30th ed.1985). A lay person cannot "readily" identify or note the state of a hymen on observation. In fact, a physician not specifically trained in the anatomy of female genitalia, let alone pediatric female genitalia, should not be qualified as an expert witness in such cases. Thus, because of the nature of

Joan Voris, MD and Mary Simon, MD, *Genital Injuries resulting from Sexual Abuse: A Longitudinal Study*, 80 J. AMER. ACAD PEDIATRICS 307–317 (1993) (reporting that even physicians are handicapped by lack of information as to what constituted "normal" genital anatomy); The Boston Women's Health Book Collective, THE NEW OUR BODIES, OURSELVES at 203 (1984); Marcia E. Herman–Giddens, BHS, PA, MPH, and Thomas E. Frothingham, MD, *Prepubertal Female Genitalia: Examination for Evidence of Sexual Abuse*, 80 J. AMER. ACAD. PEDIATRICS at 203–208 (1987).

**2.** *See* Herman–Giddens et al., *supra* note 1 (reporting that examination techniques for adequate visualization include, e.g., proper tension and timing with the exposure of the genitals while the child assumes a variety of specified positions).

this part of the body and the fact that it is frequently misperceived, it is a matter for expert witness testimony only.

Merely because a lay witness can define an internal physical condition does not transform it into one which is readily observable.[3] Ms. Harvey was not qualified to give what necessarily must be expert opinion testimony. It is on that basis that I find insufficient foundation for her testimony.

NEWMAN, Justice, concurring.

I join the Majority Opinion, but I write separately to emphasize the importance of reference to fundamental anatomical information in the decision of this case.

The Commonwealth bases its argument on the mistaken belief that the existence of a hymen is a physical condition readily observable to a lay person. Jurists are not physicians. Because there is no expert anatomical evidence in the record, this Court cannot resolve this issue without looking to reference materials and taking judicial notice of professional information concerning female genital anatomy. An appellate court cannot consider facts that are not in the record. *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978). However, courts can take judicial notice of scientific and medical facts that are generally known. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970).

We must look to scholarly articles in medical journals, which confirm that examination and determination of the condition of the hymen requires complex application of medical and anatomical knowledge by physicians. Because of the importance of understanding this aspect of female anatomy, it is appropriate for this Court to take judicial notice of the description of the hymen contained in "Gray's Anatomy," which states the following:

---

**3.** We note that Ms. Harvey actually mischaracterizes the hymen as "the thin layer of skin over the opening of the vagina." The hymen is actually not "skin" but mucous membrane. This confusion is a common misunderstanding but simply underscores how easily members of a jury might accept such testimony as accurate.

The hymen is a thin fold of mucous membrane situated at the orifice of the vagina; the inner edges of the fold are normally in contact with each other, and the vaginal orifice appears as a cleft between them. The hymen varies much in shape. When stretched, its commonest form is that of a ring, generally broadest posteriorly; sometimes it is represented by a semilunar fold, with its concave margin turned toward the pubes. Occasionally, it is cribriform, or its free margin forms a membranous fringe. It may be entirely absent, or may form a complete septum across the lower end of the vagina; the latter condition is known as an imperforate hymen. It may persist after copulation, so that its presence cannot be considered a sign of virginity. When the hymen has been ruptured, small rounded elevations known as the carunculae hymenales are found as it remains. Between the hymen and the frenulum of the labia is a shallow depression, named the navicular fossa.

Henry Gray, Anatomy Of The Human Body, p. 1319 (Lea & Febiger, 30th ed.1985). Thus, recognition and examination of the hymen requires highly specialized medical training. Furthermore, identification of this small mucous membrane would be especially difficult in this case because the victim is only seven years old.

Thus, medical expertise clearly teaches us that the appearance of the hymen varies so considerably among individuals—sometimes it is entirely absent—that one who is not trained cannot ascertain the condition of a hymen. Indeed, Ms. Harvey's own testimony is the best evidence that she was not qualified to testify concerning the condition of her niece's hymen. Ms. Harvey mistakenly described the hymen as "the thin layer of skin over the opening of the vagina." This is incorrect because the hymen is not skin. According to the above quoted portion of Gray's Anatomy, the hymen is a thin fold of mucous membrane.

The trial court also permitted Ms. Harvey to testify that the victim's hymen was "open" and not "normal." However, Ms. Harvey could not possibly recognize whether or not the hymen was "normal" because the appearance of the hymen varies so

considerably in size and shape. Thus, Ms. Harvey's inaccurate testimony completely undermines the Commonwealth's assertion that the condition of the hymen is a "physical condition readily observable to a lay person."

Moreover, I question whether a physician that does not have specific training in gynecology could even offer such testimony. In a case from New York, *People v. Hobot,* 200 A.D.2d 586, 606 N.Y.S.2d 277 (1994), *affirmed,* 84 N.Y.2d 1021, 622 N.Y.S.2d 675, 646 N.E.2d 1102 (1995), that state's highest appellate court held that a family practice physician could not testify concerning the appearance of a rape victim's hymen because she was not a gynecologist. The defendant in *Hobot* was charged with sexual assault of a nine-year-old girl. During his trial, the prosecution presented the testimony of a gynecologist with specialized training in treating adult and child victims of sexual abuse. After the trial court accepted him as an expert in the field of gynecology, the expert witness testified that he observed two small tears in the complainant's hymen after an internal examination of the child's pelvis.

After his conviction, the defendant in *Hobot* filed a post-trial motion alleging that he was denied effective assistance of counsel because his attorney did not review a report prepared by a general practitioner who examined the victim before the gynecologist. The report described the doctor's observations of contusions on the child's face and body, as well as a genital rash, and a notation that the victim's hymen was intact.

During the hearing on trial counsel's effectiveness, the general practitioner testified that she had graduated from medical school nine years before she examined the victim. She was engaged in the general practice of medicine, and her only training in gynecology consisted of a rotating internship in that field prior to her graduation from medical school. The doctor did not regularly conduct gynecological examinations of children and had never before examined a child claiming child abuse. Most significantly, the general practitioner testified that an experienced gynecologist using a speculum (a medical instrument used to examine the vagina) might be able to detect tears in the hymen that she did not see. She told the

victim's parents to take her to a hospital emergency room where a gynecologist could examine the child.

The trial court in *Hobot* held that because the general practitioner had extremely limited experience in the field of gynecology, she was not qualified to testify concerning the condition of the victim's hymen. The Court of Appeals of New York, that state's highest appellate court, affirmed the trial court's decision. *People v. Hobot*, 84 N.Y.2d 1021, 622 N.Y.S.2d 675, 646 N.E.2d 1102 (1995). Clearly, if we applied the rationale of *Hobot* to this case, testimony by a nonprofessional about the condition of the hymen would be inadmissible.

The condition of the victim's hymen in this case was a matter that could only have been presented through the testimony of a doctor with specialized training in gynecology or pediatric gynecology. Only the examining physician in this case was competent to testify about his observations concerning the condition of the victim's hymen. Accordingly, the trial court erred when it permitted the Commonwealth to introduce this testimony.

I join the decision to reverse the decision of the Superior Court.

CAPPY, Justice, dissenting.

I respectfully dissent. Because the lay person testimony in this case regarding the condition of the rape victim's hymen was merely testimony of the existence of a readily observable physical condition, I believe that the trial court did not abuse its discretion in admitting such testimony. Therefore, I would affirm the decision of the Superior Court.

At the outset, the Majority acknowledges our limited standard of review. A trial court's rulings on the admission or exclusion of evidence are controlled by the discretion of the trial court. This court will reverse only for an abuse of the trial court's discretion.[1] *Commonwealth v. Foy*, 531 Pa. 322,

1. "[A]n abuse of discretion occurs not merely when the trial court reaches a decision contrary to the decision that the appellate court would have reached. Rather, an abuse of discretion occurs 'when the

325, 612 A.2d 1349, 1351 (1992). Based upon this deferential standard, I cannot agree that the trial court abused its discretion when it allowed testimony regarding Ms. Harvey's observations of the condition of the victim's hymen and when it sustained Appellant's numerous objections to Ms. Harvey's testimony regarding the cause of such condition.

While the Majority recognizes the general rule that a lay person may testify as to distinct facts observed by him concerning the apparent physical condition or appearance of another, in my view, it fails to properly apply this precept to the case *sub judice*. The Majority submits that Ms. Harvey's testimony was improperly introduced to draw the inference that the victim's hymen had been split as a result of penetration. In support of its position, the Majority notes, Ms. Harvey testified when asked to describe what she meant by the term "split" that, "It showed that penetration had been made—"; "It showed that someone had forced—"; and "not a normal—it was a penetration that had been made." Thus, it is clear to me that the Majority really takes exception to Ms. Harvey's testimony with respect to the *cause* of the condition of the victim's hymen.

Yet with each statement regarding causation, Appellant's trial counsel objected, and the trial court *sustained the objection*. (N.T. 1/4/96, pp. 78–79). If Ms. Harvey were permitted to testify as to causation, such testimony would be objectionable as improper opinion testimony. However, the trial court never agreed to allow Ms. Harvey to testify concerning the cause of the condition of the victim's hymen, pretrial or at trial. As noted above, the trial court *sustained all objections* to the testimony which strayed into the realm of the cause of the condition of the hymen. Appellant failed to request either curative instructions or a mistrial with respect to this causation testimony. As Appellant did not preserve its claim

course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.' " *Morrison v. Commonwealth of Pennsylvania, Department of Public Welfare,* 538 Pa. 122, 134–35, 646 A.2d 565, 571–72 (1994) (citations omitted).

relative to the causation testimony, it is improper for the Majority to rely upon this testimony as a basis for reversal. Thus, there can be no error with respect to this causation testimony.[2]

The portion of Ms. Harvey's testimony that was admitted into evidence simply consisted of her statements that the victim's hymen was split or opened ("opened," "open," and "a large opening."). (N.T. 1/4/93, pp. 78–79). This testimony was merely fact testimony concerning a readily observable physical condition about which a lay person may testify. *See Travellers Insurance Co. v. Heppenstall Co.,* 360 Pa. 433, 440, 61 A.2d 809, 813 (1948); *accord Commonwealth v. Xiong,* 428 Pa.Super. 136, 147–48, 630 A.2d 446, 452 (1993), *appeal denied,* 537 Pa. 609, 641 A.2d 309 (1994)("no hymen" notation on medical report was a factual assertion rather than a diagnosis or opinion).

Yet, the Majority contends that even this testimony was improperly admitted into evidence. The Majority believes that without expert medical testimony, the jury was left without guidance as to what inferences could be drawn from such a description of the victim's hymen, i.e., whether the condition was indicative of sexual assault or other causes. However, as indicated above, an expert is not needed for the admission of an observation of a physical condition. While Ms. Harvey's testimony may not have been as clear, descriptive, or complete as desired, that does not mean that it was inadmissible. Rather, it was admissible as fact testimony, subject to cross-examination and/or the testimony of others, which would, as in other cases, furnish the best means of testing its value.

**2.** The Majority's approach with respect to Ms. Harvey's causation testimony has the effect of giving trial counsel two bites at the apple. If an objection is sustained by the trial court, trial counsel may wait for the jury's verdict. If his client is subsequently convicted, trial counsel can appeal and claim that the court failed to give cautionary instructions or grant a mistrial, even if trial counsel never asked for such relief. This approach is contrary to reason, fairness, and judicial economy.

18

Finally, the Majority notes various shortcomings of Ms. Harvey's testimony. Yet, each of these inadequacies goes to the weight of the evidence not to its admissibility. Specifically, Ms. Harvey's failure to observe the victim's hymen prior to the sexual assault, which would impact her ability to compare the condition of the hymen before and after the assault, and the lack of any medical training or expertise on the part of Ms. Harvey to testify as to the normalcy or abnormality of the hymen, all go to the weight and credibility to be given to the aunt's testimony, not to its admissibility. The Majority fails to consider this distinction. Appellant's trial counsel vigorously cross-examined Ms. Harvey on these very shortcomings and argued these shortcomings in his closing statement. (N.T. 1/4/93, pp. 86–87; N.T. 1/5/93, pp. 172–73).

I believe that the Majority gives the jury too little credit. We should be hesitant to prohibit such fact testimony from being considered by a jury because of perceived adverse inferences or inadequacies. Rather than deeming such testimony to be inadmissible, it should be admitted and subject to cross-examination—which, as Wigmore suggests, is the greatest engine for the discovery of truth known to our legal system. I believe that in this case, the jury was properly given the opportunity to consider the testimony regarding the condition of the victim's hymen and to determine the weight to be given to it.

For these reasons, I dissent and would affirm the decision of the Superior Court.